SIMMONS v. FEDERAL COMMUNICATIONS COMMISSION.

No. 9607.

United States Court of Appeals District of Columbia.

Argued April 8, 1948.

Decided May 24, 1948.
Writ of Certiorari Denied Oct. 18, 1948.
See 69 S.Ct. 67.

---

Mr. Paul M. Segal, of Washington, D. C., for appellant.

Mr. Harry P. Warner, of Washington, D. C., also entered an appearance for appellant.

Mr. Max Goldman, Asst. Chief, Litigation and Administration Division, Federal Communications Commission, of Washington, D. C., with whom Messrs. Benedict P. Cottone, Gen. Counsel, Federal Communications Commission, Harry M. Plotkin, Asst. Gen. Counsel, Federal Communications Commission, and Richard A. Solomon, Atty., Federal Communications Commission, all of Washington, D. C., were on the brief, for appellee.

Mr. Donald C. Beelar, of Washington, D. C., with whom Messrs. Louis G. Caldwell and Reed T. Rollo, both of Washington, D. C., were on the brief, for intervenor.

Mr. Percy H. Russell, of Washington, D. C., also entered an appearance for intervenor.

Before EDGERTON, CLARK and WILBUR K. MILLER, Associate Justices.

EDGERTON, Associate Justice.

This appeal is from a decision and order of the Federal Communications Commission made in April, 1947. The Commission (1) denied an application of appellant Allen T. Simmons to increase the power of station WADC at Akron, Ohio, from 5 kw to 50 kw and to change the station's frequency from 1350 kc to 1220 kc; and (2) granted the mutually exclusive application of intervenor WGAR Broadcasting Company to increase the power of station WGAR at Cleveland which operates on 1220 kc, from 5 kw to 50 kw.

The Commission found (14) that "In the event the instant application is granted, WADC proposes to broadcast all programs, commercial and sustaining, offered by the CBS network." There is no dispute about the accuracy of this finding. It is based on the testimony of appellant's witnesses. Appellant's assistant manager testified: "We will cut no Columbia regardless of whether it is sustaining or commercial. The time that Columbia doesn't service us is the time that we will sell." Appellant's director of promotion and publicity testified: "We will carry a complete Columbia sustaining and commercial schedule." He was asked "it will not be changed?" and answered "That is correct."

The Commission said in its Conclusions (4) that "The application of WADC thus raises squarely the issue of whether the public interest, convenience and necessity would be served by a station which during by far the largest and most important part of the broadcast day, 'plugs' into the network line and, thereafter, acts as a mere relay station of program material piped in from outside the community. We are of the opinion that such a program policy which makes no effort whatsoever to tailor the programs offered by the national network organization to the particular needs of the community served by the radio station does not meet the public service responsibilities of a radio broadcast licensee. We do not mean to indicate that the daily program service of the Columbia Broadcasting System or any other network does not include many programs of a high calibre, and it may even be that the applicant's proposed policy of carrying all Columbia programs, commercial or sustaining, might result in making available to its listening audience for the first time certain valuable programs of a sustaining nature, or concerning some vital public issue, which would otherwise be eliminated in favor of some local commercial program. But applicant's proposed program policy is not only tantamount to a voluntary abdication to the network of the duty and responsibility of a broadcast station licensee to determine for itself the nature and character of a program service which will best meet the needs of listeners in its area, but is an abdication to an organization which makes no pretense to scheduling its programs with the particular needs and desires of any one service area in mind. A national network affiliation can be of great assistance to a particular station's service to its listeners as the source of a quantity of high calibre programs of general interest not otherwise available locally, to supplement, rather than to supersede, the locally originated programs of the station. It is not equipped, however, to take over

the entire programming of any station; even the stations which are wholly owned by the national networks maintain extensive local program staffs which integrate the network's service into a daily program best calculated to serve local interests. And the same considerations of public policy which led us, in our Chain Broadcast Regulations, upheld by the Supreme Court in National Broadcasting Company v. United States, 319 U.S. 190 [63 S.Ct. 997, 87 L.Ed. 1344] to make it impossible for a network to restrict the opportunity of one of its affiliates to substitute programs of local interest and derivation whenever the station determined that such programs would best serve the interests of its particular audience, lead us to conclude, here, that the voluntary adoption of a similar policy by a licensee cannot serve the public interest. In either case the local interests of the listening community are needlessly sacrificed * * * "

"11. For the reasons stated * * *· we find and conclude that the public interest and convenience would not be served by a grant of the application of Allen T. Simmons, for authority to operate on 1220 kc with 50 kw power, and the application of Allen T. Simmons is therefore denied. Since we have determined that independently of any consideration of the existence of the WGAR application, the application of Allen T. Simmons must be denied, no comparative consideration of the relative merits of the two conflicting and mutually exclusive applications is required. See Simmons v. Federal Communications Commission, 79 U.S.App.D.C. 264, 145 F.2d 578. In that case the Court stated: No formal or direct comparison is necessary between an application which must be denied and one [which may] be granted. Relative consideration is meaningless unless there are two applications either of which, considered alone, might be granted."

 The cases the Commission cites fully support its action. The policy to which appellant objects is the policy the Supreme Court upheld in the cited National Broadcasting Company case. As the Court said in that case, "the Commission's powers are not limited to the engineering and technical aspects of regulation of radio communication. Yet we are asked to regard the Commission as a kind of traffic officer, policing the wave lengths to prevent stations from interfering with each other. But the Act does not restrict the Commission merely to supervision of the traffic. It puts upon the Commission the burden of determining the composition of that traffic. The facilities of radio are not large enough to accommodate all who wish to use them. Methods must be devised for choosing from among the many who apply. And since Congress itself could not do this, it committed the task to the Commission." 319 U.S. 190, at pages 215–216, 63 S.Ct. 997, at page 1009.

Appellant contends that the Commission's policy amounts to censorship, which the Communications Act forbids. 47 U.S.C.A. § 326, 48 Stat. 1091. Even if the National Broadcasting Company case had not foreclosed any such contention, censorship would be a curious term to apply to the requirement that licensees select their own programs by applying their own judgment to the conditions that arise from time to time.

As far as appears, the Commission acted legally in authorizing intervenor WGAR to continue operating on 1220 kc and to increase its power from 5 to 50 kw. However, that question is not before us. In this case as in the former case between the same parties, appellant is not "aggrieved" or "adversely affected" by the granting of intervenor's application and therefore has no standing to attack it. The appeal from the granting of intervenor's application is therefore dismissed. The denial of appellant's application is affirmed. Simmons v. Federal Communications Commission, 79 U. S.App.D.C. 264, 265, 145 F.2d 578, 579.

WILBUR K. MILLER, Associate Justice (concurring).

I think the order refusing to grant a license to Simmons was properly entered by the Commission, but not for the reason assigned by it and approved by the court. Appellant's application could and should have been denied because it sought a license for a frequency already in use in the same area by the intervenor under an existing

license, and no valid reason appeared for depriving the intervenor of that use.

Instead of rejecting Simmons' application upon that obvious ground, the Commission chose to do so because Simmons had said he proposed, if the license were granted to him, to use almost exclusively the programs of the Columbia Broadcasting System. This would not be in the public interest, the Commission said, and would amount to an abdication of the prospective licensee's right and power to select the programs for his broadcasts. I consider it, on the contrary, to be an exercise of the right of choice.

Simmons had not bound himself by contract with Columbia to use its programs as extensively as he said he proposed to do. Nothing would prevent him from interrupting that use at will, and interjecting programs of local origin and interest whenever he saw fit, unless the Commission itself should require him to adhere completely to his expressed intention.

Denial of a license because the applicant expects to make large use of the facilities of one of the major broadcasting companies of the country, saying that such use will not be in the public interest, seems an arbitrary and capricious exercise of power not granted by statute, but expressly forbidden by it. It is not a finding based on evidence. Nor is it justified by the claim that in the public interest the Commission may require a balance between national and local material to be maintained by *every* station. The demands of his listeners, of which a licensee is keenly aware, will require that balance. The idea is especially untenable and groundless when, as in this case, the proposed station is in a metropolitan area already served by some fifteen other stations which devote time to the broadcasting of programs which have only a local interest.

To uphold the Commission's order because the applicant expressed an intention to make extensive use of Columbia's programs is to grant to the Commission the power of censorship, which is expressly forbidden by the Act. "Such a power is so abhorrent to our traditions that a purpose to grant it should not be easily inferred."[1] Certainly the power of censorship should not be granted by a court when it has been withheld by the Congress.

---

[1] Hannegan, Post Master General v. Esquire, Inc., 1946, 327 U.S. 146, 151, 66 S.Ct. 456, 459, 90 L.Ed. 586.